UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RESHAT ALKAYISI ET AL.,<br><br>Defendants | Crim. No. 21-10208-NMG |

GOVERNMENT'S MOTION IN LIMINE TO ADMIT
LAW ENFORCEMENT LAY OPINION TESTIMONY

The United States of America, by its attorneys, Acting United States Attorney Joshua S. Levy and Assistant U.S. Attorneys Alathea E. Porter and Katherine Ferguson, respectfully moves this Court to permit experienced law enforcement witnesses to offer lay opinion testimony regarding the drug trade.

The investigation into the defendants[1] involved court-authorized interception of communications over defendant Reshat Alkayisi's telephone as well as recordings of controlled purchases of methamphetamine by a cooperating witness. Law enforcement intercepted telephone calls and text messages and recorded conversations involving the defendants that contained coded and/or slang language. For example, Alkayisi and his co-conspirators used words such as (but not limited to) "packages," "crystals," "blocks," "bags," and "dry ice" to refer to methamphetamine or its texture, and terms such as "loot" to refer to drug proceeds. Alkayisi and others also regularly

---

[1] At this time, the remaining defendants include (1) Reshat Alkayisi, (4) Brian Keleman, (7) Andre Watson, (8) Emil Dzabiev, (9) Edison Klotz, (10) Patrick O'Hearn, and (11) Christina Lua. Defendant Klotz is scheduled to plead guilty on March 14, 2024.

referred to different strains of marijuana by name, and members of the conspiracy commonly used truncated and/or coded language to refer to the price of drugs. Communications containing such code and/or slang will be offered into evidence at trial.

During the course of the investigation, agents regularly intercepted communications between and among the charged defendants during which they negotiated and arranged drug transactions. Agents also seized drugs from some of the defendants, including but not limited to approximately four pounds of methamphetamine left by Alkayisi at a hotel in New Hampshire on April 20, 2021; approximately one pound of methamphetamine, among other drugs, seized from Emil Dzabiev on May 20, 2021; approximately 100 pounds of methamphetamine seized from Brian Keleman on June 1, 2021; and approximately 30 pounds of methamphetamine seized on June 25, 2021, from a package sent to Alkayisi. The government anticipates offering evidence of interceptions during which defendants discussed quantities of drugs in which they intended to transact, as well as evidence of drug seizures from the defendants.

Finally, at the conclusion of the investigation, agents seized two firearms, ammunition, methamphetamine, marijuana, and a drug ledger (located on a computer) from Alkayisi's property (where Christina Lua and Keleman also resided); drugs, including methamphetamine, from Patrick O'Hearn's residence; and a collection of weapons from Andre Watson's vehicle and residence. The government intends to offer evidence of these seizures at trial.

At trial, the government anticipates calling Special Agent Maria Classon and Task Force Officer Michael Rumery of the Federal Bureau of Investigation, among other law enforcement witnesses, as percipient lay witnesses. The government anticipates eliciting testimony from Special Agent Classon, Task Force Officer Rumery, and/or others regarding the meaning of coded language used during intercepted communications and/or recorded meetings with and between the

defendants. The government expects to inquire about whether certain quantities of drugs discussed during intercepted communications and/or seized from the defendants are consistent with distribution or personal use, and the government also expects to inquire about the meaning of names and numbers listed in the drug ledger seized from Alkayisi. The government also anticipates eliciting testimony regarding the use of firearms as tools of the drug trade to protect drugs and drug proceeds and the use of other types of weapons in connection with the drug trade.

Federal Rule of Evidence 701 provides that lay witnesses may testify as to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding of the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The Rule is designed to allow a witness to testify "based on the lay expertise [he] personally acquires through experience, often on the job." *United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006) (upholding lay opinion testimony about drug records recovered during an investigation); *United States v. Ayala-Pizarro*, 407 F.3d 25, 28 (1st Cir. 2005) (holding that lay testimony about the operation of drug points and the packaging of heroin was properly admitted pursuant to Rule 701). "[T]he touchstone for the admissibility under Rule 701 of such lay[]opinion testimony is whether the testimony has the 'potential to help the jury.'" *United States v. Spencer,* 873 F.3d 1, 14 (1st Cir. 2017) (quoting *United States v. Albertelli,* 687 F.3d 439, 447 (1st Cir. 2012)).

Courts regularly permit law enforcement testimony about matters within their extensive experience as lay witness testimony under Rule 701. Such testimony often concerns the modus operandi of drug distributors. *See, e.g.*, *United States v. Moon,* 802 F.3d 135, 147–48 (1st Cir. 2015) (permitting officer's testimony that drugs appeared to be heroin and crack cocaine and that drug dealers often possess firearms was properly admitted under Rule 701); *Spencer,* 873 F.3d at

13–14 (permitting officers' testimony that defendants' patterns of conduct and speech were, on the basis of their experience, believed to be typical of those working together as a team in selling drugs); *United States v. Valdivia*, 680 F.3d 33, 50–51 (1st Cir. 2012) (permitting officer's testimony that drug traffickers frequently put their phones in fictitious names).

"A police officer noticing patterns of behavior across criminal operations uses straightforward logic to conclude a defendant's behavior fits within that pattern and thus, does not need to be qualified as an expert." *United States v. Vega,* 813 F.3d 386, 394 (1st Cir. 2016). Testimony by a law enforcement agent about the drug quantity signifying distribution as opposed to personal use, the tools of the drug trade, and transportation of drugs all is admissible as lay testimony. *See Maher,* 454 F.3d at 24 (holding that an officer's testimony that, based on his experience, certain post-it notes were likely drug orders and the number "4" likely referred to a quantity of drug found by law enforcement "did not cross the line to become expert testimony"); *Ayala–Pizarro,* 407 F.3d at 29 (holding that an officer's testimony that heroin seized at drug points was typically packed in aluminum decks and that the heroin seized in the case was packaged in such decks was Rule 701 testimony). Agent testimony under Rule 701 also is admissible to explain coded language used by drug traffickers. *See, e.g.*, *United States v. Rosado-Perez*, 605 F.3d 48, 55 (1st Cir. 2010) ("[W]e have long held that government witnesses with experience in drug investigations may explain the drug trade and translate coded language for juries, either through lay or, if qualified, expert testimony."); *see also, e.g.*, *United States v. Belanger,* 890 F.3d 13, 27–29 (1st Cir. 2018) (allowing testimony by a Special Agent in the Drug Enforcement Administration to help the jury understand drug slang in recorded phone calls); *United States v. Dunston,* 851 F.3d 91, 97 (1st Cir. 2017) (finding that the admission of a law enforcement officer's testimony "was comfortably within the ambit of the district court's discretion" because the officer was

"knowledgeable about the idiom of the drug trade and, in particular, the vernacular of this group of miscreants.").

Here, the anticipated law enforcement testimony regarding the modus operandi of drug dealers will assist the triers of fact with determining facts at issue in the case. A typical juror is unlikely to be familiar with the practices of drug traffickers, including terms used to refer to drugs, typical distribution quantities, prices commonly charged, use of weapons, and record-keeping. The law enforcement officers the government anticipates calling as witnesses at trial have extensive experience investigating drug organizations, including experience reviewing intercepted wire and electronic communications and experience interviewing cooperating defendants and potentially cooperating defendants. They have developed a working knowledge of the manner in which drug distributors commonly operate, tools commonly used in the drug trade, including weapons, and common coded language and terms used by drug traffickers to attempt to disguise their communications. The proposed law enforcement testimony is necessary to provide the jury with a thorough understanding of intercepted and recorded communications, context for intercepted communications and drug seizures, and information with which to assess the significance of items seized during the investigation, and the manner in which those items relate to the practices of a drug trafficker. It also is "rationally based on [agents'] perception of the evidence" and based on lay expertise gained on the job. As such, it is admissible lay opinion testimony.

//

//

//

//

For all of the foregoing reasons, the government respectfully requests that the Court grant the government's motion.

                                                          Respectfully submitted,

                                                          JOSHUA S. LEVY
                                                          Acting United States Attorney

                             By:    */s/ Katherine Ferguson*
                                                          KATHERINE FERGUSON
                                                          ALATHEA E. PORTER
                                                          Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that I am filing this document via the ECF system, which will cause copies to be sent by electronic mail to defendants' attorneys of record.

                                                          */s/ Katherine Ferguson*
                                                          KATHERINE FERGUSON
                                                          Assistant United States Attorney

Date:   February 20, 2024