UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTINA LUA,<br><br>Defendant | Crim. No. 21-cr-10208-NMG |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Assistant United States Attorney Alathea E. Porter, respectfully submits this sentencing memorandum in connection with the sentencing of defendant Christina Lua (hereinafter, the "Defendant"). On April 4, 2024, pursuant to a Plea Agreement, the Defendant plead guilty to Count Three of a six-count Second Superseding Indictment,[1] charging her with Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h).

As detailed in the final Pre-Sentence Report (hereinafter, "PSR"), prepared by the United States Probation Office (hereinafter, "Probation"), the Defendant is responsible for laundering at least $203,000 in drug proceeds. PSR, ¶ 24.

Given the facts of this case, the nature and circumstances of the offense, and the Defendant's background, the Government recommends that the Court sentence the Defendant to 15 months of imprisonment, one year of supervised release, a $100 special assessment, and forfeiture as set forth in the Plea Agreement.

I. **BACKGROUND OF THE CASE**

The facts of the case are set forth in detail in the PSR, and are therefore not fully restated

---

[1] The Defendant was not charged in the remaining counts.

1

herein. PSR, ¶¶ 10-24. In summary, in the fall of 2020, a cooperating witness (hereinafter, "CW") provided information to law enforcement about the drug trafficking activities of James Holyoke (hereinafter, "Holyoke"). PSR, ¶ 10. Beginning in October 2020 and continuing through April 2021, the CW completed twelve successful controlled purchases of methamphetamine from Holyoke and from the drug trafficking organization of which he was a member, including from Holyoke's methamphetamine supplier, Reshat Alkayisi (hereinafter, "Alkayisi"). PSR, ¶ 11. The Defendant is Alkayisi's wife, who conspired with Alkayisi to launder his drug proceeds and also personally laundered some of Alkayisi's drug trafficking proceeds. PSR, ¶¶ 11, 15-16, 19-24.

Beginning in May 2021, pursuant to Title III wiretap orders, investigators intercepted wire and electronic communications to and from a telephone used by Alkayisi for a total of sixty days. PSR, ¶ 12-13. Based on interceptions and surveillance, investigators learned that Alkayisi distributed large, multi-pound quantities of pure methamphetamine to a number of individuals, including Holyoke and others. *Id*. In addition to his methamphetamine trafficking, Alkayisi also maintained a large illegal marijuana grow on the property where both he and the Defendant lived. *Id*.

Over the course of the sixty days of interceptions, investigators intercepted numerous communications between Alkayisi and the Defendant during which they discussed Alkayisi's drug trafficking business. PSR, ¶ 13. Multiple examples are set forth in the PSR. PSR, ¶¶ 13-18. Alkayisi would regularly call the Defendant while he was out distributing methamphetamine, and he would tell her what he was doing. *Id*. For example, on May 22, 2021, while Alkayisi was delivering methamphetamine to his distributors, investigators intercepted a call between Alkayisi and the Defendant in which he told her he was out doing "drug runs." PSR, ¶ 16. During that conversation, Alkayisi also told the Defendant that he had "Nu-Nu" with him and he told the

Defendant, "Train 'em from a young age… no one will suspect a handicap kid drug – uh, delivering drugs." *Id.*

At the time of the investigation, Alkayisi was the largest methamphetamine distributor in New England. In total, investigators ***seized*** over 70 kilograms of pure methamphetamine during the investigation. Almost 45 kilograms of that was from one seized shipment. Another 13 kilograms was from another single seized shipment. Additionally, based on interceptions, surveillance, and a drug ledger found on Alkayisi's computer, between just January and June 2021 Alkayisi sold over 180 kilograms of methamphetamine (worth almost $2.4 million based on what he was charging his distributors).

In June 2021, investigators seized a shipment of methamphetamine destined for Alkayisi that contained 100 pounds (approximately 45 kilograms) of 100% pure methamphetamine. Alkayisi owed his methamphetamine supplier a huge debt for the seized methamphetamine that had been supplied on credit, and he confided in the Defendant when he was going to meet the supplier to pay the drug debt for that shipment. PSR, ¶ 18. Prior to meeting his supplier, Alkayisi told the Defendant that he was just giving the supplier money and that he was "not taking any product," meaning methamphetamine. *Id.* These interceptions indicate that the Defendant had knowledge of Alkayisi's methamphetamine business.

The interceptions also indicate that the Defendant made efforts to hide her finances from certain family members, so that they would not get suspicious of Alkayisi's drug trafficking. For example, during one phone call with Alkayisi, the Defendant told him how she lied about how Alkayisi made his money and that she did not wear her expensive ring in front of her family ("He was grilling me about our financial situation and wants to know what you're up to and said you buying these cars… I didn't even wear my ring in front of [him]"). PSR, ¶ 17.

Alkayisi and his co-conspirators used multiple methods to launder drug proceeds, including using a shell corporation and paying the Defendant and himself paychecks from the shell company's bank account, mailing bulk cash to his supplier, paying the bail of his drug distributors, structuring cash deposits, transferring money between multiple accounts, as well as buying vehicles in cash. PSR, ¶¶ 19-23. The Defendant personally participated in multiple methods of laundering Alkayisi's drug proceeds.

The Defendant used Alkayisi's drug proceeds to purchase two vehicles in cash in March and April 2021. PSR, ¶ 23. First on March 8, 2021, the Defendant withdrew $9,000 from a bank account and also used $40,000 in cash to purchase a $49,000 cashier's check made payable to a car dealership in Rhode Island. *Id*. Bank surveillance footage shows the Defendant at the bank counter with Alkayisi, and shows the Defendant place large stacks of cash on the counter. *Id*. Similarly, on April 29, 2021, the Defendant purchased another vehicle from the same dealer using $54,000 in cash. *Id*.

The Defendant made multiple cash deposits into numerous bank accounts, consistently in amounts less than $10,000 so as to avoid reporting requirements. PSR, ¶¶ 19, 22. Bank records indicate that between December 2018 and May 2021, a total of $265,590 was credited to an account held by the Defendant, including over $160,732 in cash deposits. PSR, ¶ 22. Investigators obtained surveillance videos from the bank, which revealed that both the Defendant and Alkayisi made cash deposits into the account held in the Defendant's name. *Id*. Each of those deposits were structured and in amounts ranging between $6,000-$8,000 in an effort to avoid reporting requirements. *Id*. There is no evidence that the Defendant or Alkayisi had any legitimate source of income that would generate that type of cash. *Id*. In addition, between October 2020 and May 2021, the Defendant made at least 21 separate cash deposits totaling over $100,000. *Id*. Each of

those deposits was under $10,000, most being between $1,000 and $8,000. *Id.* This structuring of cash deposits in amounts under $10,000 was done as a way to avoid reporting requirements and to conceal the unlawful nature of the funds.

## II. ADVISORY SENTENCING GUIDELINES

Probation determined that the Defendant's total offense level is 18, and the government agrees with this calculation. PSR, ¶¶ 30-41. Probation also determined that the Defendant falls into criminal history category I. PSR, ¶ 45. With a total offense level of 18, and a criminal history category of I, the resulting advisory sentencing guideline range is 27-33 months. PSR, ¶ 79.

## III. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

### A. <u>Nature of the Offense</u>

The Defendant was responsible for laundering ***at least*** $203,000 in drug proceeds. Given the evidence in this case, the enormous amount of methamphetamine that Alkayisi (the Defendant's husband and co-conspirator) trafficked and the amount of money that went through multiple accounts held by the Defendant, that is a conservative estimate. Alkayisi was responsible for distributing over $2.3 million worth of methamphetamine over the course of just six months.

Money laundering is a very serious offense. It is a necessary step in the trafficking of illegal drugs. Indeed, Congress enacted the Money Laundering Control Act ("MLCA") in an effort to stem the flow of illicit proceeds back to the criminal enterprise, where the proceeds provide the capital needed to continue and expand the criminal activity. *See Drug Money Laundering: Hearing Before the Senate Comm. On Banking, Housing, and Urban Affairs,* 99th Cong., 1st Sess. 7 (1985). The laundering of drug proceeds allows the drug trafficking organization to continue to obtain illegal drugs and to further distribute those drugs. It is a critical component to the success of a drug trafficking organization.

Additionally, while the MLCA does not require a defendant to have knowledge of the specific unlawful activity, the United States Sentencing Guidelines recognize that where that fact is present, an enhancement is warranted. Here, the Defendant knew that the unlawful proceeds she was laundering were drug trafficking proceeds. That fact increases the seriousness of the specific nature of the Defendant's offense, and is a primary reason that a term of imprisonment is warranted here.

### B. Characteristics of the Defendant

The Defendant is a 51-year-old woman, with no prior criminal history. PSR, ¶¶ 43-44. As set forth in the PSR, as well as in the Defendant's sentencing memorandum, the Defendant has had serious challenges in her life and she has been severely mistreated since she was a young child, including by her husband and co-defendant Alkayisi. PSR, ¶¶ 51-59; Defendant's Sentencing Memorandum. Based on the investigation, the government believes that the description of the relationship between the Defendant and Alkayisi is accurately set forth in the Defendant's Sentencing Memorandum. Due to the personal nature of the Defendant's history and her relationship with Alkayisi, the government will not restate those facts here.

The Defendant's criminal conduct is limited to laundering her husband's drug proceeds, and while she benefited from the money he made trafficking millions of dollars of methamphetamine, she appears to have engaged in criminal activities only at his direction. It also appears that whatever benefit she received was substantially controlled by Alkayisi. These mitigating factors support a downward variance from the advisory guideline sentencing range, but they do not support a sentence of probation as requested by the Defendant.

### C. Specific and General Deterrence

While there may not be a need for specific deterrence with respect to the Defendant herself,

6

even keeping in mind the mitigating factors, imposing a sentence of probation would be insufficient when considering general deterrence. Those who launder drug proceeds play an important role in drug trafficking and a sentence of imprisonment (even if brief) sends a strong message that this serious conduct will be met with serious consequences.

## IV.   CONCLUSION

For the reasons set forth herein, as well as will be addressed at the sentencing hearing, the government respectfully recommends that the Court sentence the Defendant to a term of 15 months in prison, followed by one year of supervised release, a $100 special assessment, and forfeiture as set forth in the Plea Agreement.

The Defendant committed a serious offense that played a critical role in the drug trafficking process and that conduct warrants a term of incarceration. Because of her background, as well as the limited role she played in the offense, however, a downward variance from the advisory guideline sentencing range is appropriate. Based on the foregoing, the government's recommendation of 15 months imprisonment, which is 45% below the low end of the GSR, is the minimum sentence sufficient, but not greater than necessary.

DATED: August 11, 2024                                  Respectfully submitted,

                                                        JOSHUA S. LEVY
                                                        Acting United States Attorney

                                              By:       */s/ Alathea E. Porter*
                                                        Alathea E. Porter
                                                        Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that on August 11, 2024, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

      */s/ Alathea E. Porter*
      Alathea E. Porter
      Assistant U.S. Attorney