```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3     UNITED STATES OF AMERICA,        )
                                        )
 4                      Plaintiff       )
                                        )  No. 1:21-cr-10208-NMG
 5     vs.                              )
                                        )
 6     RESHAT ALKAYISI,                 )
                                        )
 7                      Defendant.      )
                                        )
 8                                      )
                                        )
 9

10

11          BEFORE THE HONORABLE NATHANIEL M. GORTON
                  UNITED STATES DISTRICT JUDGE
12                      Rule 11 Hearing

13

14

15         John Joseph Moakley United States Courthouse
                       Courtroom No. 4
16                    One Courthouse Way
                  Boston, Massachusetts 02210
17

18                      April 2, 2024
                        10:33 a.m.
19

20

21            Kristin M. Kelley, RPR, CRR
                 Official Court Reporter
22      John Joseph Moakley United States Courthouse
                One Courthouse Way, Room 3209
23              Boston, Massachusetts 02210
                E-mail: kmob929@gmail.com
24
           Mechanical Steno - Computer-Aided Transcript
25
```

```
 1    APPEARANCES:

 2

 3            Alathea E. Porter
              United States Attorney's Office MA
 4            1 Courthouse Way
              Suite 9200
 5            Boston, MA 02210
              617-748-3318
 6            alathea.porter@usdoj.gov
              for Plaintiff.

 7

 8            Mark W. Shea
              Shea & LaRocque LLP
 9            88 Broad Street
              Suite 101
10            Boston, MA 02110
              617-577-8722
11            markwshea@gmail.com
              for Reshat Alkayisi.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  All rise.  The United States District
 3    Court for the District of Massachusetts is now in session.  The
 4    Honorable Nathaniel M. Gorton now presiding.  The case of
 5    United States versus Reshat Alkayisi, 21-10208, will now be
 6    heard before this Court.
 7            Would counsel please introduce themselves for the
 8    record.
 9            MS. PORTER:  Good morning, your Honor.  Alathea Porter
10    on behalf of the United States.
11            THE COURT:  Good morning, Ms. Porter.
12            MR. SHEA:  Good morning, your Honor.  Mark Shea on
13    behalf of Reshat Alkayisi, who stands in front of me.
14            THE COURT:  Mr. Shea and Mr. Alkayisi, good morning.
15            As I understand it, Mr. Shea, your client is here to
16    change his plea, is that correct?
17            MR. SHEA:  That is correct.
18            THE COURT:  If he may take the witness stand, and you
19    may join him if you wish.
20            MR. SHEA:  Yes.  Thank you.
21            RESHAT ALKAYISI, sworn.
22            THE COURT:  Good morning --
23            MR. SHEA:  Would you like him to stand during the?
24            THE COURT:  No.  That's fine.
25            Good morning again, Mr. Alkayisi.
```

10:33 (line 10)
10:33 (line 20)

| | |
|---|---|
| 1 | THE DEFENDANT:  Good morning, your Honor. |
| 2 | THE COURT:  Do you understand that you are now under |
| 3 | oath and that, if you answer any of my questions falsely, those |
| 4 | answers may later be used against you in a prosecution for |
| 5 | perjury or making a false statement?  Do you understand that? |
| 6 | THE DEFENDANT:  Yes, I do. |
| 7 | THE COURT:  Would you please state your actual name |
| 8 | for the record. |
| 9 | THE DEFENDANT:  Reshat Alkayisi. |
| 10:35 10 | THE COURT:  How old are you, Mr. Alkayisi? |
| 11 | THE DEFENDANT:  I am 62. |
| 12 | THE COURT:  And what is your educational background? |
| 13 | THE DEFENDANT:  I have a BA in management from Sonoma |
| 14 | State University in California. |
| 15 | THE COURT:  Have you ever been treated for any mental |
| 16 | illness or addiction to narcotic drugs of any kind? |
| 17 | THE DEFENDANT:  No, but my father was a psychiatrist. |
| 18 | THE COURT:  That's not what I'm asking. |
| 19 | THE DEFENDANT:  No. |
| 10:35 20 | THE COURT:  You, yourself, have not been treated for |
| 21 | any mental illness or addiction to narcotic drugs, is that |
| 22 | correct? |
| 23 | THE DEFENDANT:  Correct. |
| 24 | THE COURT:  Are you presently under the influence of |
| 25 | any drugs, medication or alcoholic beverage of any kind? |

```
 1              THE DEFENDANT:  None.

 2              THE COURT:  Have you received a copy of the Indictment

 3       pending against you, that is the written charges made against

 4       you, and have you discussed those charges and the case in

 5       general with Mr. Shea as your lawyer?

 6              THE DEFENDANT:  Yes, I have.

 7              THE COURT:  And, Mr. Alkayisi, in your own words, what

 8       do you understand that you are being charged with this morning?

 9              THE DEFENDANT:  All the discussions that I had with

10:36 10   Mr. Shea.

11              THE COURT:  What are you being charged with here this

12       morning?

13              THE DEFENDANT:  All the counts you mean?

14              THE COURT:  What are they?  You don't have to give me

15       the technical definition.  What are you charged with?  Why are

16       you here?

17              THE DEFENDANT:  Conspiracy of drugs.

18              THE COURT:  Conspiracy to distribute drugs?

19              THE DEFENDANT:  Yes.

10:36 20        THE COURT:  Are you fully satisfied with the counsel,

21       representation and advice given to you by Mr. Shea as your

22       attorney in this case?

23              THE DEFENDANT:  Yes, I am.

24              THE COURT:  Ms. Porter, I understand there is no

25       written plea agreement, is that correct?
```

1          MS. PORTER:  That's correct, your Honor.

2          THE COURT:  Mr. Alkayisi, has anyone made any promise

3     or assurance to you of any kind in an effort to make you plead

4     guilty here this morning?

5          THE DEFENDANT:  No.

6          THE COURT:  Has anyone attempted to force you to plead

7     guilty here this morning?

8          THE DEFENDANT:  No.

9          THE COURT:  Do you understand the offense to which you

10:37 10     are pleading guilty to is a felony, and if you're found guilty

11     of that offense, if your plea is accepted, you will be found

12     guilty of that offense and that adjudication may deprive you of

13     valuable civil rights, such as the right to vote, the right to

14     hold public office, the right to serve on a jury, the right to

15     possess any kind of firearm?  Do you understand all of that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Ms. Porter, will you inform the defendant

18     of the maximum possible penalties that the defendant faces with

19     these charges and if there are any mandatory minimums.

10:37 20          MS. PORTER:  Yes, your Honor.

21          The defendant, Reshat Alkayisi, is charged in Count

22     One with conspiracy to distribute controlled substances in

23     violation of Title 21 United States Code Section 846.  There is

24     also a drug weight attributable to him which carries a

25     mandatory minimum.  For that count, he is facing a mandatory

1    minimum of ten years in prison with a maximum of life, a fine

2    of up to ten million dollars, a term of supervised release of

3    not less than five years, and up to life, a mandatory Special

4    Assessment of $100, and forfeiture as alleged in the

5    indictment.

6            In Count Two, he is charged with possession of a

7    firearm in furtherance of a drug trafficking offense in

8    violation of Title 21 United States Code Section 924(c).  That

9    offense carries a mandatory term of incarceration of five years

10:38 10   from and after any sentence imposed on Count One and with a

11   maximum of life in prison, a fine of up to $500,000, supervised

12   release of not more than five years.

13           Count Three charges money laundering conspiracy in

14   violation of Title 18 United States Code Section 1956(h), and

15   counts four and five charge the defendant with money laundering

16   offenses in violation of 18 United States Code Section 1956.

17   Those three counts carry the same maximum penalties, and that

18   is a maximum term of imprisonment of 20 years, a fine of up to

19   $500,000, or twice the amount of laundered funds, whichever is

10:39 20   greater, and a maximum term of supervised release of three

21   years.

22           All of these counts carry a mandatory special

23   assessments of $100 and forfeiture as alleged in the Second

24   Superseding Indictment.

25           In addition, the defendant is not a United States

1  citizen.  He may face potential immigration consequences,

2  including deportation.

3          THE COURT:  Mr. Alkayisi, do you understand the

4  possible consequences of your plea here this morning?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Under the Sentencing Reform Act of 1984,

7  the United States Sentencing Commission issued guidelines for

8  federal judges to follow in criminal cases.  Have you and

9  Mr. Shea, as your attorney, discussed how those guidelines may

10:40 10  apply in your specific case?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that a decision of the

13  United States Supreme Court, rendered many years ago now,

14  rendered the Sentencing Guidelines advisory rather than

15  mandatory, meaning that I have the discretion to sentence you

16  anywhere in the range set forth in the statute pertaining to

17  the crime that you are pleading guilty to and that I am not

18  required to sentence you within the guidelines or even based

19  upon the factors contained in those guidelines?  Do you

10:40 20  understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you further understand that the Court

23  will not be able to determine even what advisory guideline

24  applies in your case until after a presentence report has been

25  prepared for me by the Probation Department and both you and

1    the government have had a chance to challenge the facts that

2    are set forth in that report?  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You further understand that after it has

5    been determined what the advisory guideline is the judge, in

6    this case that means me, has the authority in some

7    circumstances to impose a sentence that is more severe or less

8    severe than those called for in the guidelines?  Do you

9    understand that?

10:41 10          THE DEFENDANT:  Yes.

11             THE COURT:  Do you also understand that in some

12   circumstances either you or the government may appeal to a

13   higher court any sentence that I impose?  Do you understand

14   that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Finally, do you understand that parole has

17   been abolished and you will not be released on parole if you

18   are sentenced to prison?  Do you understand that?

19             THE DEFENDANT:  Yes.

10:41 20          THE COURT:  Mr. Alkayisi, do you understand generally

21   that you have a right to plead not guilty and to persist in

22   that plea and that you would then have the right to a trial by

23   jury, during which you'd have the right to be represented by a

24   lawyer in your defense, you'd have the right to see and hear

25   all of the witnesses and have them cross-examined in your

1    defense, you'd have the right on your own part to decline to

2    testify unless you voluntary agree to do so, and you'd have the

3    right to the issuance of subpoenas, or compulsory process, to

4    compel the attendance of witnesses to testify in your defense?

5    Do you understand all of that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you further understand that by entering

8    a plea of guilty, if that plea is accepted by this Court, there

9    will be no trial and you will have waived or given up your

10:42 10    right to a trial by jury as well as those other rights

11    associated with such a trial that I just described?  Do you

12    understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Ms. Porter, will you inform the defendant

15    of exactly what facts the government would prove if this matter

16    were to go to trial.

17             MS. PORTER:  Yes, your Honor.

18             If this matter were to go to trial against defendant

19    Reshat Alkayisi, the evidence would be in summary as follows:

10:43 20             In the fall of 2020, a cooperating witness, or CW,

21    provided information to law enforcement about the drug

22    trafficking activities of an individual named James Holyoke who

23    was involved in selling multi-pound quantities of

24    methamphetamine in the Boston area.

25             Beginning late October 2020 and continuing through

1    March 2021, the CW, acting under the supervision and direction

2    of law enforcement, completed 12 successful controlled

3    purchases of methamphetamine from the drug trafficking

4    organization, including from Holyoke as well as from the

5    defendant before you, Reshat Alkayisi, who is identified as

6    Holyoke's methamphetamine supplier.  All of the controlled

7    purchases were successfully recorded and surveilled by law

8    enforcement.

9            Prior to and following each controlled purchase, the

10:43 10   CW was searched by law enforcement for contraband or personal

11   money.  All of the methamphetamine purchased during these

12   controlled purchases has been confirmed by the DEA laboratory

13   to be methamphetamine.

14           Of the controlled purchases that involved Alkayisi,

15   those were as follows:

16           On February 5, 2021, at the direction of

17   investigators, the CW made arrangements with Holyoke to buy a

18   pound of methamphetamine.  Holyoke told the CW he was working

19   and he would make arrangements for the CW to meet with Reshat.

10:44 20   The CW called the number provided by Holyoke and spoke with

21   Alkayisi.  They agreed to meet in Plainfield, Connecticut to

22   complete the deal.

23           Later, the CW met with Alkayisi in a parking lot in

24   Plainfield, Connecticut and Alkayisi provided the CW with a

25   pound of methamphetamine in exchange for $7,000.  Laboratory

1    analysis confirmed that substance to be 541 grams of

2    methamphetamine.

3            On March 19, 2021, at the direction of investigators,

4    the CW made arrangements to purchase another two pounds of

5    methamphetamine from Alkayisi.  The CW and Alkayisi met inside

6    of Alkayisi's vehicle in Plainfield, Connecticut.  During the

7    meeting, Alkayisi provided the CW with two pounds of

8    methamphetamine in exchange for $14,000.  Laboratory analysis

9    confirmed the substance provided by Alkayisi to be 918 grams of

10:45 10    methamphetamine.

11            On April 15, 2021, at the direction of investigators,

12    the CW made arrangements with Alkayisi to purchase three pounds

13    of methamphetamine.  Alkayisi told the CW that he was in New

14    Hampshire and that he would send his associate, who he called

15    Brian, who investigators identified as Brian Keleman.  The CW

16    then met with Keleman in a parking lot where Keleman provided

17    the CW with three pounds of methamphetamine.  Laboratory

18    analysis confirmed the substance provided by Keleman to be

19    approximately 1.37 kilograms of methamphetamine.

10:45 20            Over the course of the investigation investigators

21    identified a number of Alkayisi's regular methamphetamine

22    customers.  In addition to James Holyoke, investigators

23    identified customers Robyn Costa, Patrick O'Hearn, Eric

24    Daneault, Emil Dzabiev and Andre Watson, among others,

25    including Kyle Joyce.

1        During the first week of April 2021 investigators

2    learned Robyn Costa was planning to meet with Alkayisi so he

3    could supply her with methamphetamine.

4        On April 3, 2021, location data from court-authorized

5    GPS tracking devices on both Costa end Alkayisi's vehicle

6    indicated they were meeting in Braintree.  Investigators

7    subsequently conducted a motor vehicle stop of Costa's vehicle.

8    During the stop investigators seized approximately five pounds

9    of methamphetamine and investigators arrested Costa and Kyle

10:46 10   Joyce, who was driving Costa's car.

11        The evidence would be, if the case were to go to

12    trial, that Alkayisi paid the bail for both Costa and Joyce

13    following their arrests and that he did so so that Costa and

14    Joyce would continue to distribute Alkayisi's methamphetamine.

15    In fact, shortly after this occurred where he paid their bail,

16    investigators seized approximately four pounds, or 1.8

17    kilograms, of methamphetamine that Alkayisi had attempted to

18    leave at a New Hampshire hotel for Joyce so Joyce could further

19    distribute the drugs.  When Costa ended up on home detention

10:47 20   following her arrest and bail and she was unable to distribute

21    methamphetamine, Alkayisi started selling directly to one of

22    her customers, Eric Daneault, so that he could supply Costa's

23    methamphetamine customers.

24        The two bail payments for Costa and Joyce form the

25    basis for Counts Four and Five of the Second Superseding

1    Indictment, which are the two substantive money laundering

2    counts naming Alkayisi.

3         Beginning in May 2021, pursuant to Title III wiretap

4    orders entered by a district judge in Massachusetts,

5    investigators intercepted wire and electronic communications to

6    and from Alkayisi's telephone for a total of 60 days.

7    Interceptions revealed that Alkayisi, in addition to being a

8    large scale methamphetamine distributor in New England, also

9    maintained a large, illegal marijuana grow operation at his

10:48 10   residency in Rhode Island.  In addition to delivering

11   methamphetamine to his customers, Alkayisi directed Brian

12   Keleman to deliver methamphetamine to some of his customers,

13   including to James Holyoke.

14        For example, based on interceptions and surveillance,

15   at the direction of Alkayisi, Keleman delivered over 18 pounds,

16   or over 8 kilograms, of methamphetamine to Holyoke on behalf of

17   Alkayisi in just May 2021 alone.

18        Over the course of the investigation Alkayisi traveled

19   on multiple occasions to both Nevada and California.  Prior to

10:48 20   and upon his return from those trips he supplied a number of

21   his methamphetamine customers.

22        For example, on May 12, 2021, based on interceptions

23   and surveillance, Alkayisi delivered methamphetamine to

24   Daneault, to Patrick O'Hearn and to another customer.  The

25   evidence would be that during that meeting with Daneault,

1   Alkayisi supplied him with 1.8 kilograms of methamphetamine.

2          As another example, on May 20, 2021, Alkayisi

3   delivered methamphetamine to Daneault, again to Andre Watson

4   and to Emil Dzabiev.  The evidence would be that Alkayisi

5   supplied Daneault with three pounds, or over 1.3 kilograms,

6   supplied Watson with two pounds, or approximately 900 grams,

7   and supplied Dzabiev with one pound, approximately 455 grams,

8   of methamphetamine during those meetings.

9          Following the meeting between Alkayisi and Dzabiev on

10:49 10  May 20, investigators conducted a motor vehicle stop of

11  Dzabiev's vehicle and seized 455 grams of pure methamphetamine.

12         On June 1, 2021, Alkayisi directed Keleman to pick up

13  methamphetamine that he had shipped to him via UPS.

14  Interceptions indicate that Alkayisi directed Keleman to pick

15  up the methamphetamine so that he could then meet with Holyoke

16  and Keleman would supply Holyoke with eight pounds of

17  methamphetamine.

18         Investigators observed Keleman retrieve four large

19  boxes from a UPS store, the very UPS store that Alkayisi had

10:50 20  directed him to.  After retrieving those boxes, Keleman called

21  Alkayisi, told him that they were Chewy boxes, referring to the

22  online pet supply company.  Alkayisi responded, "That's how

23  they send it.  That's their disguise."

24         After Keleman drove away, investigators conducted a

25  motor vehicle stop.  Keleman sent Alkayisi a message to

1    indicate he was being stopped.  During that stop investigators

2    seized the boxes which contained approximately 100 pounds, or

3    45 kilograms, of 100 percent pure methamphetamine.

4         Following the stop, investigators intercepted a number

5    of calls and communications in which Alkayisi directed another

6    associate to move his methamphetamine and his guns out of what

7    he referred to as "the small barn".  Specifically, Alkayisi

8    referred to an AK-47 and boxes of bullets that were in the bin

9    with what he called the dry ice in the small barn.  Alkayisi

10:51  10   also directed this individual to move his handgun.  He directed

11   the individual where to go on his property to move the guns and

12   ammunition, specifically to a location where they could not be

13   seen from the outside.

14        Indeed, on July 8, 2021 when investigators executed a

15   search warrant at Alkayisi's property, they found an AK-47, a

16   black handgun with no serial number, and over 4,200 rounds of

17   ammunition associated with those guns in the very location

18   Alkayisi had directed his associate to hide them.

19        Over the course of the investigation, the evidence

10:51  20   indicated that Alkayisi stored his methamphetamine supply in

21   this location that he referred to as "the small barn", the same

22   location where he stored the AK-47 and ammunition.  In addition

23   to his reference to the dry ice in the bin with the AK-47,

24   investigators also intercepted multiple calls in which Alkayisi

25   directed Keleman to go to the small barn in order to retrieve,

1    prepare and package methamphetamine to deliver to Holyoke.

2          This evidence regarding the guns and the location of

3    the methamphetamine forms the basis, in part, for Count Two of

4    the Second Superseding Indictment charging Alkayisi with

5    possession of a firearm in furtherance of a drug trafficking

6    offense.

7          On June 25, 2021, investigators learned about another

8    suspicious package that had been shipped by Alkayisi's

9    methamphetamine supplier in California.  The package was

10:52 10    addressed to Alkayisi's girlfriend with a Connecticut address

11    but with her name spelled wrong.  Investigators obtained a

12    warrant to seize and search that package.  Inside it contained

13    about 30 pounds, or about 13.6 kilograms, of 100 percent pure

14    methamphetamine.  Investigators intercepted a number of

15    communications in which Alkayisi tried to track that package.

16    Additionally, Alkayisi spoke with his supplier about the

17    missing package and asked him to figure out where it was.

18          Investigators also conducted a financial investigation

19    into Alkayisi and his co-conspirators.  In addition to

10:53 20    receiving drugs in the mail, shipping records and testimony, as

21    well as other evidence, including evidence of a seized package

22    that contained $65,000 in cash, demonstrate that Alkayisi

23    regularly shipped drug proceeds back to his source of supply in

24    California.  The evidence would also be that Alkayisi sometimes

25    personally transported cash drug proceeds from Massachusetts to

1    California to pay his methamphetamine supplier.

2          Additionally, evidence from bank records and
3    interceptions demonstrate that Alkayisi routinely deposited or
4    had others deposit on his behalf cash drug proceeds in amounts
5    less than $10,000 in an effort both to conceal the nature of
6    the funds as well as to avoid reporting requirements.

7          Evidence from bank records and interceptions would be
8    that some of Alkayisi's customers would pay him via
9    peer-to-peer payments such as Zelle, PayPal and CashApp.  For
10:54 10   example, bank records indicate that, between January and July
11   2021, customer O'Hearn transferred approximately $100,000 to
12   Alkayisi in peer-to-peer payments.

13         The evidence would also be that Alkayisi maintained a
14   shell company called ALKC Corp. that he used to launder his
15   drug proceeds.  ALKC Corp. was registered in Massachusetts with
16   O'Hearn's residence listed as the principal mailing address.
17   The corporate documents list Alkayisi as the only manager of
18   the business and describes the business as a consultant service
19   that consults and provides tools for farmer who produce
10:54 20   vegetables.

21         The evidence at trial would be this was not a
22   legitimate business.  Alkayisi also had multiple bank accounts
23   in the name of the shell company.

24         As noted on July 8, 2021, investigators executed a
25   search warrant at Alkayisi's property.  In addition to the

1   ammunition and guns already described, investigators dismantled

2   a large, illegal marijuana grow operation that was spread

3   across multiple buildings and consisted of hundreds of

4   marijuana plants.

5           Investigators also seized multiple electronic devices,

6   one of which was a computer that contained an Excel spreadsheet

7   that appears to be a ledger that Alkayisi used to track his

8   methamphetamine sales.  The ledger has multiple tabs, one for

9   each month of 2021.  Each tab lists the client by first name

10:55 10  and has a column for each week, then lists out a total and a

11  balance for each client.  The ledger is consistent with the

12  methamphetamine deliveries that I have described.

13          Based on the ledger, as well as seized packages and

14  other package seizures and drug seizures in the case, at least

15  662 pounds, or 300 kilograms, of methamphetamine are

16  attributable to Alkayisi.

17          That is a summary of the evidence that the government

18  expects it would present if the case were to go to trial

19  against defendant Alkayisi.

10:56 20          THE COURT:  Mr. Alkayisi, do you have anything to add

21  to what Ms. Porter says the government would be able to prove

22  if this matter were to go to trial?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  Do you disagree with anything she says the

25  government would be able to prove?

1        THE DEFENDANT:  No, your Honor.

2        THE COURT:  That being so, I would ask my Deputy to

3   inquire of the defendant how he now wishes to plead.

4        Mr. Alkayisi, will you please stand.

5        THE CLERK:  You are charged in a six count Superseding

6   Indictment to which you previously pled guilty.  Do you now

7   wish to change your plea?

8        THE DEFENDANT:  Yes.

9        THE CLERK:  As to Count One, charging you with

10:56 10  conspiracy to distribute and possess, with intent to

11  distribute, controlled substances in violation of Title 21

12  United States Code Section 846; Count Two, possession of a

13  firearm in furtherance of a drug trafficking offense in

14  violation of Title 818 United States Code 924(c); Count Three,

15  money laundering conspiracy in violation of Title 18 United

16  States Code Section 1956(h); and Counts Four and Five, money

17  laundering in violation of Title 18 United States Code Section

18  1956(a), how do you plead; guilty or not guilty?

19        THE DEFENDANT:  Guilty.

10:57 20      THE CLERK:  Thank you.

21        THE COURT:  That being so, it is the finding of the

22  Court in the case of the United States versus Reshat Alkayisi

23  that the defendant is fully competent and capable of entering

24  an informed plea and that his plea of guilty is a knowing and

25  voluntary plea, supported by an independent basis in fact,

1    containing each of the essential elements of the offenses

2    charged.  His plea is therefore accepted and he is now judged

3    guilty of those offenses.

4        Mr. Alkayisi, a written presentence report will be

5    prepared for me by the Probation Department.  You will be asked

6    to give information for that report.  Your attorney may be

7    present if you wish.  Both you and your attorney will be given

8    the opportunity to read that presentence report before the

9    sentencing hearing.  At the sentencing hearing itself, not only

10:58 10    your attorney but you will be afforded the opportunity to

11    speak.

12        Do you understand all of that?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Then the sentencing will be scheduled for

15    Thursday, July 11 at 3 p.m.  Any known conflicts?  Mr. Shea?

16        MR. SHEA:  Sorry, Judge.

17        THE COURT:  Ms. Porter?

18        MS. PORTER:  None, your Honor.  Thank you.

19        THE COURT:  Thursday, July 11, 3 p.m.?

10:58 20        MR. SHEA:  It looks perfect, Judge.  Thank you.

21        THE COURT:  Thursday, July 11, 3 p.m. for sentencing.

22        The defendant is incarcerated.  There's no move to

23    change is that status, am I correct, Mr. Shea?

24        MR. SHEA:  You are correct, your Honor.

25        THE COURT:  Is there any further business then to come

1  before the Court in these proceedings in Ms. Porter?

2          MS. PORTER:  No, your Honor.

3          THE COURT:  Mr. Shea?

4          MR. SHEA:  Not today.  Thank you.

5          THE COURT:  All right.  We are adjourned.  Thank you.

6          THE CLERK:  All rise.  This matter's adjourned.

7          (The Honorable Court exited.)

8          (Adjourned, 10:59 a.m.)

1                    C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS     )

6

7

8           I, Kristin M. Kelley, certify that the foregoing is a

9    correct transcript from the record of proceedings taken

10   April 2, 2024 in the above-entitled matter to the best of my

11   skill and ability.

12

13

14       /s/ Kristin M. Kelley                October 29, 2024

15       Kristin M. Kelley, RPR, CRR              Date
         Official Court Reporter
16

17

18

19

20

21

22

23

24

25